## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

SMITH RANGEL CONSULTING,
LLC dba Mattox Global

                 Plaintiff,

v.

JOHN DOE(S)

                Defendants.

Case No. 1:19-cv-1577

## **COMPLAINT**

The plaintiff, Smith Rangel Consulting, LLC dba Mattox Global, by counsel, and for its Complaint states as follows on information and belief:

### Nature of Action

1. This is an action at law for defamation per se, defamation, and tortious interference with business relationship.

### The Parties

2. Plaintiff Smith Rangel Consulting, LLC is a limited liability company organized under the laws of Georgia and has an address of 5910 Shiloh Road East, Suite 121, Alpharetta, Georgia. Plaintiff does business in the online marketplace of Amazon.com ("Amazon") under the store name Mattox Global.

3. Defendant Does are individuals or companies of unknown identity who acted on behalf of Robanda International, Inc. ("Robanda") to publish or

cause to publish allegations to Amazon that plaintiff was engaged in the trafficking of counterfeit Robanda products thru its store front on Amazon.

4. Despite plaintiff's efforts, it is not reasonably possible to identify the defendants at this time or the true content of the defamatory allegations made. Thus, the name and statements made by defendants, whether individual, corporate, associate, or otherwise are unknown to plaintiff who thereby sues defendants by such fictitious names.

## Jurisdiction and Venue

5. This Court has diversity jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332, as this action involves citizens of different states and the asserted rights and interest of the plaintiff in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs.

6. This Court has personal jurisdiction over defendants because defendants published the defamatory allegations to the Amazon servers located in Chantilly, Virginia (see https://www.datacenters.com/amazon-aws-chantilly) which is in this judicial district, or otherwise established contacts with Virginia and this judicial district sufficient to make the exercise of personal jurisdiction proper.

7. Venue over the claims of the plaintiff is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events giving rise to the claims, i.e., the last act of publication occurred in this district.

## Background

8. Plaintiff's claim arises from defendant's pattern of unsupported and untrue allegations to Amazon that plaintiff was engaged in sales of counterfeit CRACK and BODYOGRAPHY brands of products and the refusal to withdraw the latest allegation as to a CRACK brand hair product.

9. Plaintiff was an authorized distributor of the CRACK and BODYOGRAPHY brands of products from Robanda. An inventory of these products was lawfully acquired from Robanda without restriction or qualification for resale. Resales activities are permitted by *Prestonettes v. Coty*, 44 S.Ct. 350 (1924) and Restatement (Third) of Unfair Competition, §24 (2009). Robanda is fully aware that such products are neither inauthentic nor counterfeit.

10. On October 15, 2018 Robanda sent plaintiff a notice alerting ". . . ALL of our buyers" about a new, exclusive, sales agreement that had been signed for the Amazon seller platform for the CRACK Hair Fix product (Exhibit 1). An identical letter was sent on May 4, 2019 for the BODYOGRAPHY product (Exhibit 2). These letters announced a change in the terms of their prior sale despite full consummation of the prior sales:

> From this point forward, Crack Hair Fix does NOT authorize any Amazon sellers. The necessary arrangements have been made to have ALL unauthorized sellers shut down within 14 days. From the time of this message, you have 14 days to sell through your inventory. Any unauthorized sellers still listing after the 14-day period will receive a notice, directly from Amazon, regarding removal of their listing.

11. In the 14-day warning letters sent to its distributors, Robanda referred to the implementation of an "exclusive partnership deal" as the sole basis for the submission of complaints to Amazon. Indeed, no mention is made of counterfeit sales in the 14-day warning letters Robanda first issued or in the misuse of Amazon's counterfeit reporting system as an improper way to persuade Amazon to remove the accused product listings.

12. Amazon does not enforce exclusive distribution agreements. As noted at : https://www.amazon.com/report/infringement: "[V]iolations of such agreements do not constitute intellectual property rights infringement. As the enforcement of these agreements is a matter between the manufacturer and the retailers, it would not be appropriate for Amazon to assist in enforcement activities."

13. Shortly after the October 15, 2018 letter (18 days to be specific), plaintiff began to receive a series of policy warning notifications for the CRACK Hair Fix and BODYOGRAPHY products indicating that Amazon had "received a report from a rights owner concerning the authenticity of the products" identified by their Amazon tracking numbers ("ASINs").

14. The "rights owner" referred to in the Amazon notice is Robanda or someone acting on its behalf.

15. Plaintiff has received a total of five notices that it has been accused of trafficking in counterfeit BODYOGRAPHY and CRACK brand products.

16.     On June 3, 2019 plaintiff received the first notification that a complaint (complaint ID 6040831131) had been filed with Amazon that the Robanda BODYOGRAPHY products were "inauthentic" (Exhibit 3). Plaintiff asked for reconsideration and withdrawal because the products offered came from Robanda (Exhibit 4).

17.     In an email to Amazon dated July 8, 2019 Robanda admitted that the June 3, 2019 complaint (ID 6040831131) "was filed in error" (Exhibit 5).

18.     Upon request by plaintiff, four of the five complaints have been withdrawn.

19.     Despite the admission in July, Robanda filed, or caused to be filed, the latest complaint again alleging counterfeit sales. The notification was received by plaintiff on October 2, 2019 (Exhibit 6). In this complaint, plaintiff was notified by Amazon that a complaint had been filed alleging infringement of US Trademark Registration No. "77916042". The cited number is actually the application serial number of US Trademark Registration Number 3,926,792 for the mark CRACK associated with "hair care preparations." The record of this mark at the US Patent and Trademark Office shows that this mark is owned by Robanda International, Inc.

20.     The email from Amazon in Exhibit 6 removed much of the content of the original allegation, but included the following language notifying plaintiff that it had been accused of selling counterfeit CRACK brand products:

Hello,

We received a report from a rights owner that the products listed at the end of this email are inauthentic.

The rights owner is asserting that the products infringe the following trademark:
-- 77916042

Why did this happen?
One or more of your listings may be infringing the intellectual property rights of others.

We're here to help.
If you need help understanding why your listings may infringe the intellectual property rights of others, please search for "Intellectual Property Policy" in Seller Central Help (https://sellercentral.amazon.com/gp/help/external/201361070).

How do I reactivate my listing?
Please provide one of the following to reactivate your listings:
1) A retraction of the report from the rights owner:
-- PolicyEnforcement@robanda.com

2) An invoice or letter of authorization from the manufacturer or Rights Owner verifying the product's authenticity to notice-dispute@amazon.com. External links are not accepted. For security reasons, we only accept attachments in the following file formats: .jpeg, .jpg, .pjpeg, .gif, .png, .tiff,

Have your listings been removed in error?
If you believe there has been an error, please tell us why. Your explanation should include the following information:
-- Proof that you have never sold or listed the reported product. We will investigate to determine if an error occurred.

OR

-- Explanation of why you were warned in error. We will investigate to determine if an error occurred.

What happens if I do not provide the requested information?
If we do not receive the proof of authenticity, your listings will remain inactive. We reserve the right to destroy the inventory associated with this violation if proof of authenticity is not provided within 90 days.

ASIN: B004DHYZU2

>Infringement type: Counterfeit
>Trademark asserted: 77916042
>Complaint ID: 6482366651
>
>Sincerely,
>Amazon.com

21.　The notification emails from Amazon include the word "counterfeit", one or more Amazon Stock Identification Numbers ("ASINs") involved with the allegation, an Amazon complaint ID number, and an email address, but not the entire text of the allegations or the identity of the person or entity who filed the complaint.

22.　The ASIN identified in the notification was a listing by plaintiff for sale of a CRACK brand hair product purchased by plaintiff from Robanda International Inc. expressly understood to be for resale on Amazon.

23.　A request for retraction was sent to the contact information in the notification on October 4, 2019 (Exhibit 7). No response has been received nor has a retraction been filed.

24.　Plaintiff has responded to the anonymous emails listed in the notifications received from Amazon and requested copies of the actual allegation. To date, no response has been received from the recipients of those emails.

Harm to Plaintiff

25.　A "counterfeit" is defined as: "In criminal law. To forge; to copy or imitate, without authority or right, and with a view to deceive or defraud, by passing the copy or tiling forged for that which is original or genuine. Most

commonly applied to the fraudulent and criminal imitation of money." (https://thelawdictionary.org/counterfeit/)

26. Trafficking in counterfeit goods is a crime under 18 U.S.C. §2320.

27. By its nature, allegations of trafficking in counterfeit items implies moral turpitude and implies an unfavorable opinion of the person named.

28. Defendant's allegations of trafficking in counterfeit goods are demonstrably untrue.

29. By publishing the defamatory statements to Amazon as alleged herein, the defendants intended to, and did, charge the plaintiff with trafficking in counterfeit goods.

30. Plaintiff has been harmed by the false allegations of trafficking in counterfeit CRACK brand products.

31. Amazon is known to use a variety of factors to evaluate the sellers on its marketplace and to control whether, and what, each seller is permitted to offer to sell. Those factors are also used to determine whether Amazon will distribute sales proceeds from unrelated items sold by plaintiff.

32. Specifically how Amazon weighs, considers, and decides to act on each factor is not shared with the seller and thereby pose the very real risk of a unilateral suspension and seizure of all sales proceeds, not just those associated with a complaint.

33. A seller can only generally discern that allegations of poor service or selling counterfeit products, whether or not true, are more likely than not to get a seller blocked from selling one or more specific items or suspended completely.

34. If a seller's account is suspended, all money owed to the seller and any inventory held by Amazon in its "Fulfilled By Amazon" program become unavailable while any outstanding loans or fees for past sales remain due and payable. Amazon has also increased its frequency of sales proceeds seizure from sellers it unilaterally deems "bad actors" even if those proceeds were for unrelated items about which there was no question of authenticity or complaint from the actual buyer.

35. By publishing the defamatory statements to Amazon as alleged herein, the defendants intended to curtail, affect, or interrupt the working relationship of trust between plaintiff and Amazon so as to falsely induce a belief in Amazon that plaintiff was no longer trustworthy as an acceptable business partner.

36. The false statements alleged herein were authored by or with the approval of Robanda by one or more unnamed Doe defendants.

37. The false statements were published with actual, and apparent approval, and ratification of Robanda, and the statements proximately caused special and general damages to the plaintiff. The statements caused the plaintiff injury to its personal and business reputation, embarrassment, humiliation, and emotional distress.

38. The publication of such defamatory statements was intended to refer to the plaintiff and was so understood by those upon reading or hearing of such defamatory statements.

39. Defendants individually and jointly have acted with reckless disregard toward plaintiff. None of defendants purchased any of the accused products that were offered for sale by plaintiff and did not conduct an examination of the product before making the allegations to Amazon that plaintiff's products were counterfeit items. An inspection of the CRACK products offered for sale by plaintiff would have revealed that the products were authentic and genuine without modification from the form in which they were sold by Robanda to plaintiff.

40. Defendant's defamatory statements, taken as whole, are defamatory *per se,* because the false statements impute to the plaintiff a criminal offense involving moral turpitude, that, if the allegations were true, would make plaintiff vulnerable to indictment and criminal punishment.

41. The defamatory statements harm the plaintiff in its business, interfere with its business relationship with Amazon, and jeopardize its ability to continue selling products in the Amazon marketplace.

42. On information and belief, Robanda acted in bad faith in a campaign to submit multiple, false allegations of counterfeit claims against plaintiff as a way to circumvent Amazon's policy of not enforcing exclusive distribution agreements.

43. In attempting to resolve these complaints with Amazon, plaintiff has been forced to spend dozens of hours composing more than 20 emails to Amazon's Seller Performance team in attempts to fight the false allegations by Robanda.

44. The false accusations by defendants increase the risk that plaintiff's account will be suspended and thereby jeopardizes plaintiff's entire business for all products, not just those involved with the allegations.

45. Plaintiff has generated more than $2 million in gross sales thus far this year and is dependent on its sales on Amazon as a primary source of revenue to compensate its employees and pay the overhead associated with its business. Threats of suspension of that business and the associated income stream due to false allegations of counterfeit sales represent material harm to plaintiff.

46. As a direct result of Robanda's complaints, Amazon has threatened in an email dated November 12, 2018 (Exhibit 8) to terminate its business relationship with plaintiff and advised plaintiff that its account was being subjected to an internal review: "We consider allegations of counterfeit a serious matter and your account is under review. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com."

47. False accusations by defendants are the proximate cause of increased anxiety regarding the future viability of plaintiff and its ability to continue operating. As a result, plaintiff has had to cancel a sales contract for larger business space and has incurred increased costs for third-party

processing of a large volume supply delivery that could have been handled in the larger space.

48. Robanda's false counterfeit sales allegations have caused significant disruption to the day-to-day functioning of plaintiff's business, seriously harmed plaintiff's business relationship and reputation with Amazon, and have inflicted enormous personal stress on plaintiff.

49. Defendants have not made or offered an apology to plaintiff in accordance with VA Code § 8.01-46 ("Justification and mitigation of damages").

50. Virginia "recognize[s] the rule that generally corporations may be liable for compensatory damages for defamatory statements which are uttered by an agent while engaged in the scope of his employment and which grow out of an act connected with the employment. And, in connection with a qualifiedly privileged defamatory communication, corporations may be liable for compensatory and punitive damages if the agent's malicious conduct either was authorized by the principal or subsequently was ratified by it." *Oberbroeckling v. Lyle*, 234 Va. 373, 381–82, 362 S.E.2d 682, 687 (1987).

### Count I: Libel *Per Se*

51. The plaintiff herein incorporates by referenced into this count all of the allegations appearing above in this Complaint.

52. The statements authored by the defendants and published by the defendants to Amazon, referred to herein are defamatory *per se,* because the false statements impute to the plaintiff a criminal offense involving moral

turpitude that, if the allegations were true, would subject plaintiff to indictment and criminal punishment for trafficking in counterfeit goods under 18 USC §2320.

53. The statements were calculated to, and do hold the plaintiff up to unsubstantiated allegations of moral turpitude by such publication, the defendants did injure the plaintiffs' reputation with Amazon.

54. The statements, individually and taken together as a whole, prejudice the plaintiff in its business relationship with Amazon, casting plaintiff as a counterfeiter and untrustworthy business.

### Count II: Libel *Per Quod*

55. Plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

56. The statements authored by the defendants and published by defendants have caused, are causing, and will cause the plaintiff injury to its reputation, name, and ability to sell its remaining inventory of CRACK brand hair products on Amazon. Defendants' statements have increased the risk that plaintiff will be barred from selling any products in the Amazon marketplace, whether or not they are CRACK brand products.

57. The plaintiff has been injured in reputation and good standing in the selling community in which its business operates.

### Count III: Tortious Interference With Business Relationship

58. Plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

59. Before the acts described above, plaintiff enjoyed a good business relationship with Amazon.

60. Defendants knew, or should have known, about plaintiff's business relationship with Amazon when it identified plaintiff as a seller on Amazon.

61. Defendants deliberately, recklessly, and without factual support filed a series of complaints with Amazon alleging that the BODYOGRAPHY and CRACK brand products offered for sale by plaintiff were counterfeit.

62. As a direct result of defendants' actions, plaintiff's relationship with Amazon has been tainted with moral turpitude of the allegations.

63. The unfounded allegations made by defendants have harmed plaintiff. Plaintiff is now precluded from selling CRACK brand hair products even though they were lawfully acquired from the owner of the CRACK mark for hair products and remain legally eligible for resale.

64. Defendants' actions have also harmed plaintiff's reputation and placed a negative mark on its seller metrics with Amazon that increases the likelihood that plaintiff will be barred from selling any products through the Amazon marketplace and that sales proceeds for unrelated items would be seized and retained by Amazon.

65. Defendants' false allegations were made after lawfully selling the products to plaintiff with the knowledge that the products would be resold.

66. Defendants' false allegations were made willfully for improper, anticompetitive purposes.

67. Defendants' false allegations were made for the purpose of causing Amazon to believe that plaintiff was an untrustworthy business whose selling rights should be curtailed and/or suspended.

68. Defendants' false allegations were made for the purpose of interfering with the ongoing business relationship between plaintiff and Amazon.

69. Defendants' false allegations were made with full knowledge that the allegations were false.

### *Count IV: False and Disparaging Allegations Under Lanham Act Section 43(a)*

70. Plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

71. By sending false allegations to Amazon that the CRACK and BODYOGRAPHY products sold by plaintiff were counterfeit products, defendants have made false and disparaging allegations about plaintiff's products in violation of Lanham Act section 43(a) [15 USC 1125(a)].

72. Section 43(a) of the Lanham Act provides that: Any person who, on or in connection with any goods . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (1) is likely to . . . deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (2) in commercial advertising or

promotion, misrepresents the nature, . . . of . . . another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

73. Defendants made false allegations of counterfeit sales to Amazon as part of commercial activities intended to benefits sales of Robanda products by its chosen distributor over those Robanda products for sale by plaintiff.

74. The representations that the Robanda products offered for sale by plaintiff were counterfeit were false designations of origin.

75. The representations that the Robanda products offered for sale by plaintiff were counterfeit were false allegations of fact.

76. The representations that the Robanda products offered for sale by plaintiff were counterfeit were intended to deceive Amazon as to the origin of the products offered for sale by plaintiff.

77. The representations that the Robanda products offered for sale by plaintiff were counterfeit were intended to deceive Amazon as to the commercial activities of plaintiff.

78. The representations that the Robanda products offered for sale by plaintiff were counterfeit misrepresented the nature of the products offered for sale by plaintiff.

79. The representations that the Robanda products offered for sale by plaintiff were counterfeit misrepresented the commercial activities of plaintiff.

80.     Plaintiff has been damaged by the false allegations made by defendants.

**Prayer for Relief**

WHEREFORE, plaintiff requests this Court to enter the following relief for the plaintiff that:

A.      For judgment that plaintiff has been defamed and harmed by the actions of defendants in the amount of THREE MILLION DOLLARS ($3,000,000.00), as compensatory damages, plus interest at the maximum rate allowed by law on the entire judgment until paid;

B.      That preliminary and permanent injunctions be issued enjoining defendants and their agents, affiliates, all persons in concert or participation with any of them, and any entity owned or controlled by any of defendants who receives actual notice of the injunction from (i) making further allegations of counterfeit goods or trafficking in counterfeit goods by the CRACK and BODYOGRAPHY brand products offered for sale by plaintiff, (ii) making further allegations of counterfeit goods or trafficking in counterfeit goods without first performing an inspection of the goods involved, and (iii) retaining a full and complete copy of all such allegations made for a period of one year after publication to any third party;

C.      That defendants preserve all records (including electronically stored information) associated with the making of any allegations to any third party that concern counterfeit goods or the trafficking in counterfeit goods for a period of one year after publication to any third party;

  D. That plaintiff be awarded interest, including pre-judgment interest, on any of the foregoing sums in accordance with 28 USC § 1961;

  E. That plaintiff be awarded its costs in this civil action, including reasonable attorney fees and expenses; and

  F. That plaintiff be awarded such other and further relief as the court may deem just and proper.

Dated: December 16, 2019        Respectfully submitted,

                 **Johnson Legal PLLC**

                 /s/ Lance G. Johnson

                 Lance G. Johnson, #27,929
                 12545 White Drive
                 Fairfax, Virginia 22030
                 Tel: 202-445-2000
                 Fax: 888-492-1303
                 *Attorney for Plaintiff*